IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAVID NATHANIEL JONES

      v.

UNITED STATES OF AMERICA

:

:

:   Civil Action No. DKC 2004-3136
   Criminal Case No. DKC 2002-0077

:

:

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case is the motion of *pro se* Petitioner, David Nathaniel Jones, to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. (Paper 163). For the reasons that follow, the motion will be denied.

**I. Background**

On October 2, 2002, Petitioner was found guilty of four counts of distributing five grams or more of cocaine base, one count of possessing with intent to distribute fifty grams or more of cocaine base, and one count of possessing with intent to distribute 500 grams or more of cocaine. Petitioner was sentenced to 210 months imprisonment to be followed by five years of supervised release on January 6, 2003. The convictions were affirmed on appeal. *Jones v. United States*, No. 03-4077, 2004 WL 350930 (4th Cir. February 26, 2004). Petitioner filed the pending motion to vacate and set aside his sentence pursuant to 28 U.S.C. § 2255 on October 1, 2004. (Paper 163). In that motion, Petitioner raises the following two claims: (1) that he received ineffective assistance of counsel; and

(2) that his sentence was unlawfully enhanced in violation of his Sixth Amendment right to a trial by jury.

On October 8, 2004, the court entered an Order directing the United States to show cause why the motion to vacate should not be granted.  (Paper 165).  The Government filed its response in opposition to Petitioner's § 2255 motion on February 18, 2005. (Paper 176).

## II. Standard of Review

Title 28 U.S.C. § 2255 requires a Petitioner asserting constitutional error to prove by a preponderance of the evidence that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law."  On the other hand, "[t]he scope of review of non-constitutional error is more limited than that of constitutional error; a non-constitutional error does not provide a basis for collateral attack unless it involves 'a fundamental defect which inherently results in a complete miscarriage of justice,' or is 'inconsistent with the rudimentary demands of fair procedure.'"  *United States v. Mikalajunas*, 186 F.3d 490, 495-96 (4th Cir. 1999) (internal citations omitted). While a *pro se* movant is entitled to have his arguments reviewed with appropriate consideration, *see Gordon v. Leeke*, 574 F.2d 1147, 1151-53 (4th Cir. 1978), if the § 2255 motion, along with the files

and records of the case, conclusively shows that he is entitled to no relief, a hearing on the motion is unnecessary and the claims raised in the motion may be dismissed summarily.  28 U.S.C. § 2255. Furthermore, only issues that have not been waived may be raised:

> In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack.  The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel.  And, in order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence.

*Mikalajunas*, 186 F.3d at 492-93.

## III. Analysis

### A. Ineffective Assistance of Counsel

Petitioner asserts that he was denied the effective assistance of counsel.  Specifically, Petitioner contends that Counsel was ineffective in (1) not negotiating a plea agreement; (2) not discovering that the government had evidence of Petitioner's fingerprints on the bags of narcotics that were seized at his residence; and (3) unsuccessfully challenging the search warrant that was executed at his residence for lack of probable cause.

Claims of ineffective assistance of counsel may be raised for the first time on collateral review. *Massaro v. United States*, 538 U.S. 500, 504 (2003).  In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court established a two-prong test that a petitioner must satisfy to prevail on an ineffective assistance of counsel claim.  First, the petitioner must show that counsel's performance was deficient when measured against an objective standard of reasonableness.  *Id*. at 687-688.  Second, the petitioner must show that counsel's deficient performance prejudiced the defense, by depriving the petitioner of "a trial whose result is reliable." *Id*. at 687.

To establish the first prong, Petitioner must produce evidence that counsel's performance was not "within the range of competence demanded of attorneys in criminal cases." *Id*. at 687.  There is a presumption that counsel's actions are strategic trial decisions. *Id*. at 689.  The court is thus highly deferential to counsel's decisions and reviews the challenged conduct in light of the totality of circumstances. *Id*. at 689-90.

As for the second prong, Petitioner must show that but for his counsel's deficient performance, the result of the proceedings would have been different.  *See id*.  "It is not enough for the [petitioner] to show that the [deficient performance] had some conceivable effect on the outcome of the proceeding[,]" instead, Petitioner "must show that there is a reasonable probability that,

but for counsel's unprofessional errors, the [sentence] would have been different." *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding. *Id*. If there is no prejudice, a court need not review the reasonableness of counsel's performance in order to determine whether counsel provided ineffective assistance. *Quesinberry v. Taylor*, 162 F.3d 273 (4th Cir. 1998).

## 1. Plea Negotiations

Petitioner alleges that "at the outskirts of the government case, he asked Counsel to negotiate a guilty plea" but that Counsel told him that the government "would not accept or offer an ethical plea agreement, because they wanted [him] to cooperate against [his co-defendants]." After the government filed a second indictment adding conspiracy and aiding and abetting counts against Petitioner, he states that he had no choice but to seek trial on those new charges. Petitioner asserts that later, after he learned that his co-defendants all entered guilty pleas, he again confronted Counsel with a desire to plead guilty, but that Counsel advised him that there were constitutional grounds for dismissal of the case, including a speedy trial violation and an entrapment defense. Petitioner explains that once his co-defendants entered guilty pleas, the government dismissed the conspiracy and aiding and abetting charges against him, but that Counsel "did not consider Jones' desire to [plead] guilty [.]" Petitioner asserts

that he was prejudiced by Counsel's failure to negotiate a plea agreement because it rendered him ineligible for a three point reduction for acceptance of responsibility under the Sentencing Guidelines and other benefits that an agreement with the government would have provided.

The government contends in opposition that Petitioner's insistence that Counsel was deficient for not negotiating a plea agreement is without merit because the government allegedly discussed a plea agreement with Petitioner directly and he rejected their overtures himself.  The government does not provide any affidavits or other evidence in support of this assertion, nor does it identify when the alleged discussion occurred any more precisely than "[o]n or about the beginning of [Petitioner's] trial."

The Fourth Circuit has explained that professional norms surrounding plea negotiations require defense counsel to do the following: 1) notify the client of a plea offer; 2) advise the client of the option to proceed to trial; 3) present the client with the probable outcomes of both the guilt and sentencing phases of each alternative; and 4) permit the client to make the ultimate decision.  *Jones v. Murray*, 947 F.2d 1106, 1110-11 (4th Cir. 1991).

Petitioner asserts that he was prejudiced by not obtaining a plea agreement.  He contends that he did not receive "the benefits that a plea agreement would have brought" which he only specifies to include a potential three point reduction under the then

6

applicable Sentencing Guidelines.   Petitioner's assertion is inadequate to undermine confidence in the outcome of the proceeding.   First, Petitioner asserts that a plea agreement was attainable, but for the actions of Counsel, but provides no support for this assertion.   He does not allege that an agreement was on the table and that Counsel refused to consider it or present it to him, but rather appears to presume that Counsel's mere suggestion of an agreement would produce an agreement.   This suggestion is contradicted by Petitioner's own explanation that "Counsel told him that the government would not accept or offer an ethical plea agreement, because they wanted [him] to cooperate against [his co-defendants]."   Whether based on actual interaction with the government or based on his strategic advice that the government would not offer a reduction in sentence to Petitioner if he did not cooperate with their prosecution of his co-defendants, Counsel did not fail to permit his client to make the ultimate decision by these actions.   He either informed him of the status of his discussions with the government or explained that an agreement would be largely futile if it did not include Petitioner's cooperation.   In the case of the latter, Counsel was either providing strategic legal advice and therefore did not act deficiently or did not bar Petitioner's ability to obtain a three point reduction for acceptance of responsibility for the reasons that follow.   The three point reduction for acceptance of

responsibility was not premised upon a plea agreement, but rather based upon a defendant's "clearly demonstrat[ing] acceptance of responsibility for his offense" and "assist[ing] authorities in the investigation or prosecution of his own misconduct by . . . timely providing complete information to the government concerning his own involvement in the offense; or timely notifying authorities of his intention to enter a plea of guilty[.]"  U.S. Sentencing Guidelines Manual § 3E1.1 (2002).  Thus, the initiation of plea negotiations was not a necessary prerequisite in order for Petitioner to obtain the benefits of that sentencing provision.  Indeed, a guilty plea is not required for § 3E1.1 acceptance of responsibility eligibility and does not entitle a defendant to an adjustment as a matter of right.  U.S.S.G. § 3E1.1 cmt. n. 2, 3 (2002).  Moreover, Petitioner's assertion that he suggested to Counsel that he was interested in entering plea negotiations after his co-defendants had entered guilty pleas is insufficient to establish that his counsel was deficient to his prejudice because it does not establish that Counsel failed to comply with any of the four professional norms that the Fourth Circuit has required with regard to plea negotiations.  Nowhere in Petitioner's brief does he assert that Counsel did not permit him to make the ultimate decision as to whether or not to plead guilty.

8

## 2. Failure to undermine probable cause for search warrant

Petitioner asserts that Counsel was deficient because he did not challenge successfully the adequacy of the search warrant that was used to obtain the evidence against him.  Petitioner's argument appears to be that the search warrant was issued based on stale information.  Petitioner maintains that nine days passed after the government witnessed a confidential source who purchased cocaine from Petitioner's residence.  Petitioner insists that the passage of time between the alleged purchase and the issuance of the search warrant was unreasonable and undermines any probable cause in support thereof.

A "magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" *Illinois v. Gates*, 462 U.S. 213, 236 (1984).  To establish probable cause for search warrant, a magistrate is to consider whether under the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238.  Stale search warrants arise in two situations: (1) when facts alleged in the warrant established probable cause when the warrant was issued, "but the government's delay in executing the warrant . . . tainted the search;" and (2) when "the information on which [the search warrant] rested was arguably too old to furnish 'present' probable cause." *United States v. McCall*, 740 F.2d 1331, 1336 (4th Cir. 1984).

Counsel's failure to undermine the finding of probable cause for a search warrant was not deficient representation that prejudiced Petitioner.  The first prong of the *Strickland* analysis requires Counsel's actions to fall below an objective standard of reasonableness to constitute deficient representation.  Petitioner does not overcome the presumption that Counsel's actions are strategic trial decisions through his mere assertion that the warrant was based on stale information.  Counsel filed a motion challenging the warrant, but did not challenge the warrant's sufficiency at the motions hearing on June 24, 2002.  Counsel is not required to pose arguments that are without merit.  "Many courts have found probable cause to exist despite substantial gaps between the observation of the evidence at a particular premises and the issuance of a search warrant." (citing cases where courts held that the ongoing nature of an operation warranted the magistrate's inference that activity observed one month would remain present four months later and holding that under the circumstances of that case, "it was reasonable to assume that [the defendant] had [evidence] at his residence seven to nine months later"). *McCall*, at 1336.  Accordingly, Counsel's decision to not challenge further the adequacy of the search warrant which was issued only days later was not outside the range of objectively reasonable representation.

### 3. Failure to investigate

Petitioner asserts that Counsel was ineffective because he failed to recognize that the government had sent him a notice that evidence had been submitted to the FBI lab for fingerprint analysis.  The FBI analysis later revealed Defendant's fingerprints on the bags of drugs that were seized from his home.  Petitioner asserts that he was prejudiced because he took the stand and testified on cross examination that he had not seen or touched the bags of narcotics that were seized at his residence and that Counsel should have prevented him from doing so.

At trial, Counsel successfully persuaded the court to bar the fingerprint evidence from the case in chief.  The government was not allowed to call its fingerprint expert as part of its case in chief because the fingerprint analysis had not been completed until a week prior, and thus the defense had not been afforded adequate opportunity to review the results or prepare for any expert testimony.  In ruling that the government could not use its expert in their case in chief, the court explained that "if any information is presented by the defendant in his case that is properly rebutted by this [evidence] . . . . You are certainly forewarned before you have put on any defense evidence that this is available." (Paper 176, Ex. A, at 119).  After Petitioner took the stand and testified that he had not seen or touched the seized bags of narcotics, the government called the FBI fingerprint expert to

rebut Petitioner's testimony. Petitioner's claim fails because Counsel cannot be deficient beyond any objectively reasonable standard for not knowing about evidence that was not submitted to him prior to trial. Petitioner does not contend that Counsel encouraged him to testify falsely if asked about the bags of narcotics, but merely that Counsel should have prevented him from testifying. The decision to testify is one that must be made by the criminal defendant, MODEL RULES OF PROF'L CONDUCT R. 1.2(a), and advice from counsel about whether to testify is strategic advice that is inappropriate for after the fact second guessing. *See Hutchins v. Garrison*, 724 F.2d 1425, 1436 (4th Cir. 1983) ("Counsel's advice not to testify is a paradigm of the type of tactical decision that cannot be challenged as evidence of ineffective assistance."). Moreover, even if Counsel's failure to convince Petitioner not to take the stand had been deficient, Petitioner's claim would fail because he cannot show prejudice because the result of Petitioner's proceeding was not fundamentally unfair or unreliable. Petitioner cannot place the blame for his false testimony on Counsel in the absence of evidence that Counsel directed or encouraged Petitioner to testify falsely.

**B. Enhanced Sentence under Sentencing Guidelines**

Petitioner argues that his sentence constitutes an unlawful sentencing enhancement because the court applied a two level enhancement pursuant to U.S.S.G. § 3C1.1 for obstruction of

justice.    Specifically,   Petitioner    claims    that   *Blakely   v.
Washington*, 542 U.S. 296 (2004) and *United States v. Apprendi*, 530
U.S.  466  (2000)  bar  the  imposition  of  a  sentencing  enhancement
based on facts found by the sentencing judge, but neither admitted
by the defendant nor found by a jury.   The Fourth Circuit held
that *Blakely* is not available for retroactive application to § 2255
post-conviction relief movants in *Morris v. United States*, 429 F.3d
65 (4th Cir. 2005).   *Blakely* applies prospectively and only to those
cases   on   direct   appeal   at   the   time   of   the   Supreme   Court's
decisions.   *Id*. at 71-72.  Defendant's conviction was final June 7,
2004  when  the  Supreme  Court  of  the  United  States  denied  his
petition for writ of certiorari.   Thus because *Blakely* was decided
June 24, 2004, the court need not determine whether Petitioner's
claim falls within that decision because his conviction was already
final when that decision issued.   Petitioner's conviction was also
final  when  *United  States  v.  Booker*,  543  U.S.  220  (2005),  was
decided.   Accordingly, that opinion's holding that the mandatory
application of the U.S. Sentencing Guidelines was unconstitutional
does  not  apply  to  Petitioner.    *See  Morris*,  429  F.3d  65.    In
*Apprendi*, the Supreme Court of the United States held that "any
fact that increases the penalty for a crime beyond the prescribed
statutory maximum must be submitted to a jury, and proved beyond a
reasonable doubt."   530 U.S. at 490.  Petitioner was convicted of
four counts of distributing five grams or more of cocaine base, one

13

count of possessing with intent to distribute fifty grams or more
of cocaine base, and one count of possessing with intent to
distribute 500 grams or more of cocaine. Petitioner was sentenced
to 210 months imprisonment. None of the prescribed statutory
maximums for the crimes that Petitioner was convicted of is less
than forty years. Accordingly, because Petitioner was not
sentenced beyond the prescribed statutory maximum, *Apprendi* does
not apply to his sentence.

**IV. Conclusion**

For the foregoing reasons, Petitioner's motion under § 2255 to
vacate, set aside, or correct his sentence is denied. A separate
Order will follow.

```
                    /s/
         _____
         DEBORAH K. CHASANOW
         United States District Judge
```

14